IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| OZARKS MEDICAL CENTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 09-3370-CV-S-REL |
| ) | |
| IMAGINE ADVANTAGE, LLC, ) | |
| ) | |
| Defendant. ) | |

**ORDER DENYING MOTION TO DISMISS**

Before the court is a motion to dismiss filed by defendant Imaging Advantage, LLC. Defendant argues that plaintiff cannot plead a viable breach of contract claim based upon a contract that was superseded at the time of the alleged breach, plaintiff has not pled a breach of any term of the pertinent contract, and plaintiff cannot claim unjust enrichment in the face of an express agreement between the parties. For the following reasons, defendant's motion to dismiss will be denied.

*I. BACKGROUND*

According to the facts alleged in the complaint, which are assumed to be true for purposes of this motion, plaintiff and defendant entered into an agreement on March 16, 2008. Defendant agreed to provide radiology services to plaintiff in exchange for plaintiff paying any amount up to $150,000 that defendant did not collect each month for those services. The agreement contained a provision that in any month when defendant collected more than $150,000, the excess would be paid to plaintiff up to the amount

previously paid to guarantee the monthly $150,000 income. The parties agreed to reconcile the guarantee payments on a monthly basis and also at the end of defendant's fiscal year. The present controversy is alleged as follows:

> 10. During the months of March 2008 through September 2008, Imaging Advantage collected less than the monthly "Guaranteed Amount" of $150,000.
>
> 11. On information and belief, Imaging Advantage's shortfall in collections occurred because of delayed payments from its collections agency, which were subsequently resolved.
>
> 12. Because Imaging Advantage collected less than the "Guaranteed Amount" during the months of March through September 2008, Ozarks Medical Center supplemented Imaging Advantage's income by the difference of actual net collections and the "Guaranteed Amount" of $150,000, as required by the Agreement.
>
> 13. Between the months of March through September 2008, Ozarks Medical Center paid to Imaging Advantage over $400,000 in guaranteed payments.
>
> 14. On September 1, 2008, Ozarks Medical Center and Imaging Advantage entered into a Professional Service Agreement, which terminated the March 16, 2008 Agreement and implemented substantially different pricing provisions.
>
> 15. After September 2008, Imaging Advantage's collection firm was able to resume its distribution of collections, and Imaging Advantage received its collections for the months of March through September 2008. As a result, Imaging Advantage collected substantially in excess of the monthly $150,000 for that period.
>
> 16. Ozarks Medical Center subsequently requested that Imaging Advantage reimburse it for the guaranteed payments that it made to Imaging Advantage for the months of March through September 2008. Imaging Advantage has failed and refused to perform its obligation to reimburse Ozarks Medical Center for the excess guaranteed payments that Imaging Advantage received, as required under the Agreement.

On October 6, 2009, plaintiff filed a complaint against the defendant in the following counts: (1) breach of contract, and (2) unjust enrichment. Defendant filed a motion to dismiss on December 30, 2009 (document number 7), arguing that a breach of contract action cannot be premised on a contract which was superseded at the time of its alleged violation, and an express contract precludes recovery on an implied contract theory (unjust enrichment) where the recognition of an implied contract would alter the terms of the express agreement.

Plaintiff filed suggestions in opposition to the motion to dismiss on January 26, 2010 (document number 16), arguing that the breach occurred before the second agreement became effective because defendant's agent collected the payments but then delayed making those payments to defendant.

Defendant filed a reply on February 23, 2010 (document number 21).

## II. *MOTION TO DISMISS*

A motion to dismiss for failure to state a claim should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc., 528 F.3d 1001, 1023-24 (8th Cir. 2008), cert. denied, 129 S. Ct. 1000 (2009). In ruling a motion to dismiss, the court is required to view all facts in the complaint as true. CN v. Willmar Public Schools,

591 F.3d 624, 629 (8th Cir. 2010); Owen v. General Motors Corp., 533 F.3d 913, 918 (8th Cir. 2008). Although a complaint need not include detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotations and alteration omitted). Instead, the complaint must set forth "enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In this case, defendant argues that plaintiff can prove no set of facts which would establish a breach of the contract before the second contract superseded the first. The complaint, however, alleges that plaintiff made the guaranteed payments after defendant's agent collected but failed to turn over to defendant the payments for radiology services. Because receipt by an agent is equivalent to receipt by its principal, see Scherbart v. Commissioner of Internal Revenue, 453 F.3d 987, 989 (8th Cir. 2006) (citing Maryland Casualty Co. v. United States, 251 U.S. 342, 347 (1920)), plaintiff has alleged facts which, if proven, may constitute breach of contract.

The contract alleges that it paid over $400,000 "[b]etween the months of March through September 2008". During those seven months, plaintiff allegedly paid more than 1/3 of the guaranteed

4

earnings amount.  The complaint alleges that the payments were made because defendant's collections agency was collecting the payments but not turning that money over to the defendant, thereby resulting in an income of less than $150,000.

"There is a rule of law commonly known as the doctrine (of) avoidable consequences which requires . . . a party to a contract, who is subjected to injury by the breach of the other party, to make reasonable efforts and exercise ordinary care and diligence to reduce the resulting damages."  <u>Minnesota Farm Bureau Marketing Corp. v. North Dakota Agr. Marketing Ass'n, Inc.</u>, 563 F.2d 906, 914 (8th Cir. 1977).  If plaintiff proves that it entered into the superseding contract in order to minimize its damages, i.e., to avoid making continued payments under the contract when in fact that money was being collected by defendant's agent, then defendant would have been unjustly enriched by collecting the guaranteed payments, knowing that it would subsequently collect that money again when its agent turned over the payments that had been collected under the contract.

> "An express contract and an implied contract cannot coexist with respect to the same subject matter, and the law will not imply a contract where there is an express contract." But read in context, what the statement means is that an express contract necessarily trumps any implied one when there is a conflict between the two. . . . "[T]he express contract supersedes the implied contract with respect to its terms." <u>See</u> <u>generally</u> <u>Restatement (Third) of Restitution and</u>

5

> Unjust Enrichment, pt. II, ch. 4, topic 2, intro. note, at
> 298-99, reporter's note, at 301-02 (Tentative Draft No. 3,
> 2004).
>
> In this case, there is no conflict between the written
> contract and an implied contract in law to pay the value of
> the extra services.  There is, for instance, no contract to
> pay a certain amount for those services; such a contract
> would obviously supersede any claim for *quantum meruit.*  The
> only reason that a plaintiff would seek an unjust enrichment
> remedy in such circumstances would be if the reasonable
> value of its services exceeded the payment agreed to.  But
> that would deprive the party sued of the benefit of his or
> her bargain and thus entirely undermine the foundations of
> contract law.  In fact, the whole point in this case is that
> there was no contract, at least no written one, to pay for
> the extra services that Rambo rendered because the parties
> did not agree to the amount of fees payable for those
> services.  Providing a quasi-contractual remedy in this case
> can therefore not conflict with the contract.

Rambo Associates, Inc. v. South Tama County Community School District, 487 F.3d 1178, 1189 (8th Cir. 2007).

If the original contract did not provide for circumstances such that allegedly occurred here (i.e., defendant's agent collecting payments from insurance companies and patients but not turning that money over to the defendant, thereby causing the Guarantee Clause of the contract to kick in), then plaintiff's claim for unjust enrichment would not be barred.

### *III. CONCLUSION*

Based on the above, I find that defendant has not established that plaintiff can prove no set of facts which would entitle it to relief.  Therefore, it is

6

ORDERED that defendant's motion to dismiss the complaint is denied.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
May 3, 2010